Our first case of the morning is agenda number 11, case number 126074, Monique Thomas v. Elgar, Khoury, et al. Mr. Grand, are you ready to proceed? I am, Your Honor. Mr. Grassi, you may proceed. Good morning, Your Honors. Again, Karen DeGrand on behalf of the defendant appellants, Dr. Khoury and Dr. Kagan. May it please the Court, Counsel. The parties and the trial court asked for guidance in interpreting Section 2.2 of the Wrongful Death Act. Of course, the best source of the legislator's intent is the language of the statute. And the parties agree that the first paragraph of Section 2.2 tells us the General Assembly amended the Wrongful Death Act to eliminate the issue of fetal viability for wrongful death claims. The second paragraph of Section 2.2 also is clear, as even the trial court acknowledged. Paragraph 2 says there's no action against a doctor or medical institution for the wrongful death of a fetus caused by illegal consensual abortion, period. There's no qualification in paragraph 2, as plaintiffs argue, that limits its application to claims based on the performance of an abortion. The certified question, therefore, places plaintiffs' wrongful death claim against these two physicians squarely within the second paragraph of 2.2, where a woman chooses to terminate a pregnancy there is no cause of action for wrongful death of the fetus against a physician. So the answer to the certified question is yes, whether Section 2.2 of the Wrongful Death Act bars a cause of action against a defendant for fetal death if the defendant knew or had medical reason to know of the pregnancy and the alleged malpractice resulted in a nonviable fetus that died as a result of a lawful abortion with requisite consent. Within the certified question and within the complaint, it is clear that the fetus is alleged to have died as a result of a lawful abortion. And the plaintiff raises no question as to the procedure being lawful or that there was requisite consent. The remainder of the certified question regarding the physician's knowledge of the pregnancy pertains to a separate exception that's not implicated by the plaintiff's allegations. And the factual background in what is actually the second amended complaint, erroneously called the first amended complaint, plaintiffs contend that presurgical testing before elective surgery indicated a potential pregnancy. And specifically, plaintiffs allege that pregnancy screening tests show the presence of a hormone, HDC, that result, and that result indicated a pregnancy of a few weeks' gestation. In answering requests to admit therein the record, defendants explain that the same hormone is contained in certain medications, including medications that plaintiff told her physician she was taking for weight loss at that time. And in addition, an ultrasound was negative. Counsel, it's your position that Paragraph 2 is a categorical ban. Is that correct? On wrongful death claims against physicians where the death is, yes, you're on a cause by an abortion. How did you describe Paragraph 3, then? I would say that Paragraph 3, which focuses not on the cause of death, but focuses on the conduct of the physicians, pertains to situations where a physician under the standard of care has no reason to know that there is a pregnancy. And in that situation, then, that's an exception to the wrongful death claim that's permitted under Section 2.2. There is no cause of action in that situation. So we're talking about the first or the second paragraph of Section 2.2, which pertains to cause, cause of death, cause of death by abortion, and no cause of action against the physicians. And then in the second situation, the second exception that the legislatures thought was appropriate and good public policy is to determine that there would be no cause of action against physicians where the physician had no reason to know of a pregnancy. In this situation, plaintiff is alleging that the doctors should have known of the pregnancy and through the testing, and therefore, the complaint is taken out of Section 3, or I should say Paragraph 3. In terms of the categorical ban, this is, of course, a heartbreaking case, heartbreaking facts we're talking about. Well, there's an allegation that the defendant's negligent conduct injured the fetus and subjected it to serious health risks. And the physician recommended that the pregnancy be terminated because it was probable that the fetus would not survive to term.  Had Mrs. Thomas disregarded her doctor's advice that the fetus would probably not survive to term and carried the child and waited for either a miscarriage or what they're predicting here, that the child would die on the delivery table, she would then be able to sue the doctor that she's alleging negligently caused the injuries, correct? In that situation, yes, Your Honor, the second paragraph would not apply, if she was able to prove all of those allegations. But if she followed the doctor's advice, who advised her for her own health risks to terminate the pregnancy because of the injury caused by the doctor's negligence, you're saying the statute indicates that, therefore, she could not sue the doctor? That's correct, Your Honor. And that is the court has described the facts of the Light v. Proctor case of the Third District. And the, you know, the Light case is actually on all fours with this case. And that case came out of the Third District in 1989. The legislature has not done anything to address that case or that interpretation of the act. And, you know, so Light, I believe, is, provides a very compelling reason for the court to answer the question, yes, that's the certified question. And because the court there said this is an application of the unambiguous language that's contained in the statute. There is not an exception, as the plaintiff alleges here. There is not a limitation of the second paragraph to situations where the physician was the person who was performing the abortion. I mean, there, you know, that, and that is the way that the plaintiff reads the second paragraph of Section 2.2. That it pertains in the situation only to the physician who performed the abortion. But the legislature knew how to write that language into the statute, certainly. And it did not. The second paragraph of the statute pertains only to the question of cause of death and closes the door on these causes of action, having made that policy decision. Do we look at all at the nature of the injury? The, under 2.2, the nature of the injury is not what the legislature is pointing the court to. Now, we know from Williams, this Court's decision in Williams, that there's not going to be any wrongful death action unless there is an injury. But that's not what the focus of 2.2 is. And, you know, whether there had to be an injury prior to the abortion, and that is what the plaintiff is arguing in this case. There must be an injury prior to an abortion. And if there is an injury prior to abortion, then the second paragraph no longer applies. But that's not what the language says here. And the, so that issue is really a question about would there be an additional defense? And really what that is, is a roundabout way of saying that the defendant for the second paragraph to apply must be the physician who is performing the abortion. There's no other way to interpret what the plaintiff is saying. So, you know, there's no question that in that section, in that second paragraph, the legislature did not focus on the conduct of the physician. The legislature focused on the cause of death. You do not see, you know, the language in paragraph 3 is based on, based on, and then it describes the conduct of the physician. That's not what is contained in paragraph 2. Paragraph 2 focuses on whether the pregnancy was terminated by the performance of an abortion. It doesn't say by these specific defendants. The statute doesn't contain that language. So the statute talks about caused by, and certainly the abortion in this case was a cause of the unborn child's death. But, you know, I'm referring to the lengthy proximate cause analysis in the appellate court Williams case. And does that have any bearing on this, I mean, as far as multiple proximate causation, or are we just looking at what actually stops the heartbeat? Well, Your Honor, I would look at the dissent of Justice Cahill in the appellate court decision, because that's what this Court found was the correct analysis. And what Justice Cahill said was you are extending this concept of proximate causation and essentially rewriting the Wrongful Death Act to say that, to leap over the express provision in the Wrongful Death Act. And, of course, now we're not talking about a situation where a physician is involved. That's our case, but that wasn't Williams. That was a cause of action against a negligent driver, allegedly negligent driver. But in that situation, Justice Cahill wrote, and this Court agreed when the case came to this Court, that it's not a question of foreseeability or proximate cause when you're looking at the at the wrongful death. You have to have, and this language is right in the act, there has to be an injury that would have given rise to a cause of action had there not been a death. And so I think what the lengthy decision or the lengthy analysis about proximate cause in the appellate decision in Williams was rejected by this Court, and this Court adopted Justice Cahill's dissent instead. So I think what, so I go back to Light, which is on all fours, and the Light court said this is not a foreseeability analysis because that's not what's in the language of the statute. It's clear. It's unambiguous. And that's, it's really the same claim that was presented here. Now, what the plaintiff has argued is Light is really different because Light didn't allege an injury to the fetus. But Light, I don't think that that's a correct recitation of the facts of the allegations in Light. In Light, what was alleged was that because there was, there were health risks posed by the radiologist going forward with a thyroid scan without doing the testing that plaintiff said should have been done, then based on that, there was a recommendation that the mother have an abortion, the mother accepted that recommendation, and therefore there was no cause of action, period. So I don't think that Light can be reconciled, as plaintiff has argued, by making a distinction between whether there was an injury, because I believe what the plaintiff argued in response was that Light may have had the correct result, but for the wrong reason. But I don't believe that the reasoning is that the plaintiff attributes to the appellate court in Light is borne out by the opinion. So, you know, did the third district get it right? I think it did. It applied to certain in an unambiguous language, and it can't be ignored that the legislature has not amended Section 2.2 in the 30-plus years since Light was decided. So what are the conclusions that I ask this court to draw if Light is correct? First, paragraph 2 means there's no wrongful death action against a physician or a hospital where a fetal death results from a legal consensual abortion, regardless of whether the defendant physician is the physician who performs the abortion. And second, and I think the correct injury is not whether, as plaintiffs claim, an allegation of injury prior to the abortion is a distinction. You know, under Williams, that could be an additional defense, but that is not the focus of Section 2.2. The question is, did the abortion result in the actual termination of the pregnancy? And I don't think there's any dispute that that's what plaintiff has alleged in this case. And third, and I don't believe anyone disputes this, a strict and narrow construction of the Wrongful Death Act is required by this court. We're talking about interpreting a statute that's in derogation of the common law. So that overarching principle is certainly an important one that's not in dispute. And fourth, the, you know, to go back to your question, Justice Tice, the extent of the injury does not, is not a factor. That's not discussed or addressed or touched on in 2.2. But, and as the Court suggests, that it's a difficult situation, potentially a very sad, tragic situation, but there is a potential remedy. In light, as in here, plaintiff has a remedy for medical negligence. So this is, this, where we are at the end of the day is looking at a policy decision of the General Assembly. Again, undisturbed, despite many looks at the Wrongful Death Act since 1989, you know, and then what about this third paragraph? That's not what the plaintiffs allege here. We are not within this paragraph. And looking at the trial court's analysis, the trial court said, well, third paragraph doesn't apply. It's the converse of the third paragraph. So since the converse of the third paragraph is this situation, then there's got to be a cause of action, even though the Court thought that the second paragraph was very clear. I think that that reading is simply a judicial reading that eliminates a very clear section of the statute that applies here. That reading swallows paragraph two. And it even swallows paragraph two against a physician who is performing an abortion. So even ITLA, amicus, doesn't take that position. But that's really what the trial court's interpretation leads to. The trial court and the appellate court took issue with what they thought was an unjust decision to limit wrongful death claims in this fashion. But whether the legislature was rightly concerned about limiting wrongful death actions in this specific situation, of course, is a debate for the General Assembly, not for the trial judge, and not for the appellate court, and not for this court. And plaintiff's arguments about viability and whether an injury was sustained, that just highlights that there are some policy decisions that were involved that were addressed by the legislature. And we have some of the legislative debate transcripts in the record. And those were discussed as a viability. The court looked no further than the first paragraph of this provision to see that at the outset, or forget about the outset of the debate, but just the language itself says the legislature does not want to address the question of viability in these cases. And that's why they wrote it. That's how they wrote it. Without citing any basis, plaintiffs argued that the door to litigation should be open in these situations. But, you know, again, clearly the General Assembly was motivated to cut off litigation based on viability. And the same reasoning applies to plaintiff's argument that paragraph 2 applies where the fetus does not sustain an injury. Think about the proliferation of lawsuits in that instance when there is a voluntary consensual abortion. If the Court has no questions for me, I'll reserve the rest of my time for rebuttal. Thank you. Thank you. Mr. Grassi. If I get too far away, please let me know. Good morning. May it please the Court. My name is Ed Grassi. It's my pleasure to represent Chris Mitchell, Monique Thomas in this case. As is clear from all of the briefing and the prior rulings on this case, the issues in this case are not crystal clear. We understand that. We understand that trying to determine legislative intent from a bill written 40 years ago simply based on the words is not an easy task. In fact, every time I look at this case, I see something new. I see a different way to look at the issues. I see a different way to look at the words within Section 2.2. But what I see every time I look at it is that the defendant's argument in this case is legally indefensible. I don't see how it's possible that the legislative intent could possibly be what they ascribe to the legislature. Obviously, we have to start with the plain language of the statute. That's where all statutory interpretation starts. And the defendants in their brief, as we pointed out many times, ask you to look at the plain language. They don't look at the plain language of the entire statute. They want you to only look at one paragraph while saying that you have to look at the entire statute as a whole. As to the facts of this case, just briefly, I won't get into those unless you have any specific questions. But I do think it's important to note, as Your Honor pointed out, the allegations we have made is that there is a specific injury to the fetus prior to its death, and that that injury is an actionable injury under the Wrongful Death Act. So the place where I think this has to start is the Williams case, because the Williams case, in looking at what this Court ruled in Williams, I think in the end dictates how you can look at the legislative interpretation of these sections, these different paragraphs. As the Williams Court held, that the focus of the inquiry in a wrongful death case is not the death itself. The focus of the inquiry is the injury cause to the person pursuing the Wrongful Death Act case. The death is simply the precursor to having the wrongful death cause of action, because without the Wrongful Death Act, the cause of action would have died along with the decedent. So it is the Wrongful Death Act that creates the need or the ability for that person to be able to file suit. But it is not the death that is the major inquiry, as the Williams Court pointed out. The Williams Court, in looking at the underlying facts in the Williams case, said that the appellate court had looked at the wrong injury and focused on the death of the fetus prior to his death. That was the question. And the Court, in discussing this point, said that a wrongful death claim is based on an actionable injury to the fetus with recoverable damages that could have been maintained had death not intervened. The Court in Williams, I think it's very important to note, was not defining how the Wrongful Death Act works only for a particular section of the act, or only whether it's applied to a fetus. The Williams Court was explaining how the Wrongful Death Act worked for all cases filed under the Wrongful Death Act, regardless of who the plaintiff is. So when the Court was explaining that it's the actionable injury, not the death itself, that is the precursor to the injury, the focus then has to be on what is the injury in this case. So when the Court in Williams went back and looked at the facts and concluded there was not an injury to the fetus, they did not conclude in any way that the abortion of that fetus was relevant in any way to their analysis. The Court ruled that if there had been an actionable injury to that fetus, the fact that there was an abortion, that was not going to be a hindrance to that case proceeding. The Court ruled that if there was an actionable injury to the fetus, that case could have proceeded, regardless of the fact that there was an abortion. So in this case, there is an actionable injury that can be looked at under the Wrongful Death Act as the precursor to the claim. Now, it's important to note that the defendants in this case have never argued that there is not an actionable injury to this fetus. They've never argued that. They are not taking the position that the doctor's actions could not have caused any injury to this fetus. As Mr. Grant just stood here and said, the issue here, the only issue, is that the cause of death is an abortion, period, end of story. That cannot be the way the legislature intended this statute to apply. And when you look at the background of Williams and what the legislature had to know about the Wrongful Death Act at the time they enacted section 2.2, it becomes clear that the intent of the legislature is clear from the words. Now, would I have preferred that the legislature be more clear? And would I have preferred that the legislature specifically said, hey, this paragraph 2, this only applies to the physician performing this? Yes, of course. That would be the – none of this would be at issue if that was that clear. But when you look at the language, it still becomes clear that that is what the intent  Counsel, light holds opposite your argument. I don't disagree with you. But the legislature hasn't touched the statute after light for 30-plus years. And it's entirely possible, as I cited in the brief, that the legislature could have looked at the light case and said, that's correct, there was no actionable injury. So there was nothing to change. There was nothing to do with regards to that decision. Because as we pointed out in the light case, the – there is no analysis in light of the actionable injury to the fetus beforehand. There's discussion of whether there was potential injury, but there's not an analysis of whether or not section or paragraph 3 applied within light. And the fact that the legislature hasn't taken action is not a definitive statement that they agreed or that they found that light is an accurate statement of the law, that an abortion is the only key determinative factor in whether a case can proceed. So the three-way question in this case talks about nonviability. Does that matter here? Because, you know, the complaint alleged it was probable that the fetus would not survive to term. Probable. Not absolutely nonviable. I mean, there's nothing in the complaint that says that. There's still some question there. So the allegations in this complaint fall somewhere between nonviability, as in the three-way question, and the injuries alleged in light. Where do they fall and does it matter? I don't know that it does matter in terms of the certified question use of the word nonviable. The issue in our case is that we have pled that there is a specific injury and that the likelihood of survival of the fetus was minimal, and that was the need for the abortion. The use of the phrase nonviable by Judge Ehrlich in this, I don't think that changes the outcome of the certified question. The key point to his certified question is looking at the interplay of the different paragraphs, right? As Judge Ehrlich pointed out, and I think it's very important to look at his certified question, Judge Ehrlich uses the word and when he raises the question. When there is a situation where there's a medical negligence and the doctors knew of the pregnancy or should have known, under reasonable medical care should have known, and then there is an abortion that is legally performed with consent, can the cause of action proceed? Judge Ehrlich's point in making, in putting the and in there, is to say that in this situation, we have a clear implication of both paragraphs 2 and paragraph 3. And in that situation, when you have an implication of both, which in light, the paragraph 3 was never even mentioned in light, right? So when Judge Ehrlich is looking at the facts of this case, he's asking this Court and the appellate courts to rule on the question of what happens when both paragraphs are implicated. Now, as we said in our brief, and the defendants have never addressed this point in any substantive way. The appellate or, sorry, the legislature in paragraph 2 used the word wrongful death caused by an abortion. And that's a very, very key phrase, very key word in that section. You have to presume that the legislature understood how the Wrongful Death Act worked and that they understood the implications of what a wrongful death was in conjunction with the rest of the Act. If, as defendants argued, any death caused by an abortion was the key question, why put the word wrongful in there? The legislature, in adding the word wrongful, is saying there has to be a wrongful death, that the abortion can't be the wrongful death because there's no injury that precedes it. What's also key to me about paragraph 2, and I think this takes you right back to where if you look at the facts of Williams, why the defendant's argument as to the legislative intent can't stand. If the legislature's intent was to eliminate abortion as a cause of death in all rights of all wrongful death cases, why limit that to physicians? Why limit that paragraph to the physicians? If any abortion, if that's because that's their position, if there's an abortion, there cannot be a wrongful death cause of action, period. Why limit that to physicians? The only implication of that is that they understood that we're limiting that to the physicians, because otherwise, in Williams, there is an abortion, but it's the cause of action isn't against that physician that performed it, but that case could have proceeded had there been an actionable injury. But in this case, there's a physician involved, so it's totally different. You have to say it's totally different because there's a physician involved. But the legislature didn't need to add against the physician if their intent was anytime there's an abortion, there can be no wrongful death cause of action. Now, when looking at statutory interpretation, as pointed out by the trial court and the appellate court and in our briefs, I'll give you some water. Statutory interpretation cannot just lead to absurd results, right? It's not something where you can interpret a statute and say, well, these words, they're absolute, it ends right there. Mr. Grand admitted here today and admitted in the appellate court that the abortion is the one and only fact that matters in this case. And in any case like this, abortion equals they win. It's that simple to the defendants. But how is that possible that that could be the legislative intent? When paragraph 1 allows for a claim on behalf of a fetus, regardless of gestational age, and key point in paragraph 1, it mentions at the time of the injury or the death. So if the plaintiffs – I'm sorry, if the defendant's argument is agreed with as to paragraph 2, then paragraph 1 becomes subsumed by the fact that the death itself is the wrongful death, even though paragraph 1 allows you, on behalf of a fetus, to bring a claim at the time of the injury, if that's what leads to the death. Now, we did discuss, and Mr. Grand discussed paragraph 3, and oddly continues to maintain the position that paragraph 3 is not implicated in any way in this case. I'm not sure how that argument is possible to be made. When the certified question itself asks the exact question of whether or not paragraph 3 is implicated, the negative implication of paragraph 3, as stated by the trial court and the appellate court, is that if the exception does not apply, then the opposite does. If there is not a – if the actions of the physician at the time, at the time of the pregnancy, and there was malpractice, then clearly a cause of action under that scenario can proceed. So as pointed out earlier, when Judge Ehrlich raised the certified question, said if we have elements of both paragraphs here, what's the result? Now, the defendants would have you look at this and say one paragraph clearly just trumps the other. If paragraph 2 applies, then it doesn't matter. If paragraph 3 applies, it doesn't matter if paragraph 1 applies. But aren't you arguing the same thing? No. That paragraph 3 trumps paragraph 2, one paragraph trumps the other, because if – are you arguing that if paragraph 3 applies and the physician knew that the woman was pregnant, then it doesn't matter, paragraph 2 doesn't matter at all? No. I think you can look at paragraph 2 and say that it's not that it doesn't apply. It's that factually it's not the situation here, because we're not alleging that there is a wrongful death caused by an abortion. We are alleging a Wrongful Death Act case caused by the actions of the defendant in causing injury to the fetus. We have not alleged that simply the cause of death is an abortion. The word abortion does not actually appear in our complaint. That's – it does not appear anywhere in the complaint. What we've alleged is that exactly what is the situation in paragraph 3 does apply. So the abortion is not even a cause of death? I'm not saying it's not a cause of death. It's definitively a cause of the death. But under the Wrongful Death Act, that's not the sole issue. The issue is the injury to the fetus that was caused and the actions of the defendants in causing that injury to the fetus. So the issue in this case to me is, since we're here on a 619 motion, is simply whether or not we, as the plaintiffs, have the ability to try to prove this case and try to prove whether the actions of these defendants caused injury to the fetus and allow this cause of action to proceed. All of the facts are admitted as true for purposes of the 619 motion. And the facts of this case clearly show that at a minimum, we should have the ability to go forward. Counsel, you're alleging that an injury occurred prior to the abortion? Correct. Okay. Yes, fact-wise, the surgery was weeks before the abortion occurred. So as we pointed out in our brief, I do think that these paragraphs can be read in a way that allows the proper intent to be viewed. But if this Court were to look at this case and come to the conclusion that the analysis of light is proper somehow, that if there's an abortion, that that ends the discussion, then I do think that creates an ambiguity enough that you can look at the legislative history. As applied, because you're then saying that in this situation, you have one outcome, but if there's a scenario where it's not a physician, you have a different outcome. And the legislative history clearly shows what the intent of paragraph two and paragraph three were. So I do have nothing else. So if there are any questions, I'd be happy to answer them. Other than that, I thank you for your time. Thank you. Were there any other questions, Counsel? Thank you. Mr. Grand? Williams doesn't tell the Court how to resolve this case for the simple reason that Williams didn't involve a cause of action against physicians or a medical institution. And if anything, Williams suggests that there could be an additional defense, and that is as to whether there could be proof of an injury. But that is, you know, that is basic, a basic requirement for a wrongful death action. But what we're talking about here is if you have a wrongful death action under paragraph one of section 2.2, there's a couple of exceptions to that rule. And one of the exceptions is where the pregnancy is terminated by an abortion. And counsel now is saying that that allegation doesn't appear in the complaint. It certainly is expressly stated by the physician who signed the 2622 report. The issue of, but before I leave that issue of injury, I think another aspect of that, and going back to the Williams decision and the Williams appellate decision, is Justice Cahill's observation at the end of his dissent that, wow, this concept of injury in these situations, again, this didn't have anything to do with the action against physicians. This really sounds like this could be a sticky situation, a difficult concept, a difficult public policy concept. And what that made me think of when I re-read that was, you know, that's another reason that the legislature may have decided on using these limitations. Is because of the, you know, where are we drawing the line on injury in this situation where ultimately the pregnancy is terminated by an abortion? What's the legislative intent to insulate doctors from malpractice but not other tort feasors where an abortion takes place? Your Honor, this is not a, this is in counsel read that issue too. Why limit this to physicians? This is not a new concept by the legislature to protect physicians against a proliferation of losses. We have that with the 262 report, 2622 report in DeLuna. We have it with the way that the statute of limitations is written differently under Anderson and Aldrich. I don't think I cited Aldrich in my brief, so I'll leave that one out. We have no punitive damages against physicians. It's to protect physicians against a multiplicity of lawsuits. And that is the concern that is behind all of these different types of provisions that limit lawsuits against physicians. Now, counsel says, misstates what I am arguing, and that is that the only issue is abortion. It's not the only issue. Of course, there has to be, as the legislature wrote this provision, it has to be a consensual abortion, requisite consent, has to be lawful. So that isn't the only issue. But what is correct is that, yes, that provision, that second paragraph, talks about the cause of death, the termination of the pregnancy. And that is the focus, and that is the only focus. And again, I keep hearing, well, you don't say wrongful. We're talking about the way that the legislature wrote that second paragraph. It said, here's a limitation on a wrongful death action, where the fetus is terminated by a lawful consensual abortion. Then the third paragraph. Here's another limitation on a wrongful death action, where the physician has no reason under the standard of care to know about the pregnancy. It's straightforward. It's straightforward. And, you know, whether you can find, if you were drawing a Venn diagram, where there would be a situation where a physician didn't know, and also that there was a death caused by an abortion, I think that could be possible. That's not what we've argued at this point, because that's not what the allegations are that we're addressing. But that doesn't mean that there is anything wrong or inconsistent with saying, we're going to apply, we're going to enforce and apply paragraph two, and we're going to enforce and apply paragraph three. And I think that the trial judge was honestly saying, well, wait a second, is there some inconsistency here? And that's why he wrote the certified question the way he did. He wrote it sua sponte. We did not have input into it. And that was his question. That was his sincere question as he looked at the allegations of the complaint. But paragraph three is not implicated at this point. And I think one of the telling arguments that was offered by Itlow was, well, it's paragraph three, and he added the language and, you know, about an abortion into that paragraph. Well, that's not in there. That's not in there. And so what we're talking about is the conduct of the physician in the third period. We're talking about the cause in the second paragraph. And it's our position that it's clear. And we'd ask that the court answer yes to the certified question. If I have any more time, I'm happy to answer anything else the court would like to pose. It doesn't appear there are any other questions, Counselor. Thank you. Thank you very much, Your Honors. Case number 126074, Thomas Gross, and for Corey et al., is taken under advisement as agenda number 11. Mr. Green, Mr. Gross, thank you for your arguments this morning. You are excused at this time.